# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA** } | |
| } | |
| **v.** } | |
| } | |
| **RODNEY DAVID RUSSELL,** } | Case No.: |
| **Defendant.** } | **2:20-CR-293-MHH-SGC** |
| } | |
| } | |
| } | |

## MEMORANDUM OPINION

The Court seldom writes opinions regarding the criminal sentences that it imposes, but this case warrants a written opinion. Mr. Russell is a drug addict, and his addiction led him to commit a serious crime. To fund his addiction, Mr. Russell agreed to help distribute methamphetamine. Over the course of approximately three months, Mr. Russell bought and re-sold between one pound and two kilograms of methamphetamine weekly, no doubt feeding other individuals' drug addictions. (PSR, pp. 7–9; Doc. 184, pp. 14–16).[1]  A total of four kilograms of methamphetamine were attributed to Mr. Russell for his role in the drug distribution conspiracy. (PSR, p. 12).

---

[1] The conspiracy among several defendants lasted longer than three months; Mr. Russell was involved in the conspiracy for no more than three months. (Doc. 184, pp. 14-16).

After Mr. Russell's arrest on November 10, 2020, (Docket Entry, Nov. 10, 2020), Magistrate Judge Cornelius detained Mr. Russell, (Docs. 17, 21). A few days later, Mr. Russell asked Judge Cornelius to consider releasing him to CareCenter Ministries to enter a 12-month treatment program. (Docs. 29, 29-1). On November 24, 2020, Judge Cornelius released Mr. Russell to the custody of the CareCenter. (Doc. 32, p. 2). Three months later, Mr. Russell pleaded guilty to conspiracy to distribute methamphetamine. (Docket Entry, Feb. 24, 2022).

The Court began Mr. Russell's sentencing hearing on January 19, 2022. (Docket Entry, Jan. 19, 2022). Before the hearing, Mr. Russell submitted a letter from the Director of the CareCenter. (Doc. 113-1, pp. 1–3). The director explained that Mr. Russell had graduated from the center's first-year program and that Mr. Russell was eligible for a two-year leadership academy. (Doc. 113-1, p. 1). Volunteers at the center wrote letters to the Court describing Mr. Russell's efforts to help other residents of the center overcome their addictions and obtain important skills like reading. (Doc. 113-1). Several of the individuals who wrote letters for Mr. Russell spoke on his behalf at his sentencing hearing. (Doc. 184). At the conclusion of the hearing, the Court postponed sentencing to allow more time to consider Mr. Russell's request for a significant departure from his guideline range of 108–135 months. (Doc. 113; Doc. 184, pp. 16–18).

The sentencing hearing resumed on September 27, 2022. (Doc. 185). Once

again, the director of the CareCenter spoke for Mr. Russell. The director provided a letter that described Mr. Russell's leadership role at the Center and explained that Mr. Russell was responsible for administering random drug tests to the center's residents. (Doc. 185, pp. 5–6). In short, in just under two years, Mr. Russell graduated from center resident to center leader.

The United States acknowledged Mr. Russell's accomplishments and asked the Court to impose a 65-month sentence. (Doc. 184, p. 13; Doc. 185, p. 8). The United States argued that Mr. Russell needs consequences to help him avoid relapse and to punish him for the lives he harmed by distributing methamphetamine. (Doc. 185, p. 8). The United States asserted its belief in the BOP and "what it [would] be able to do for Mr. Russell." (Doc. 185, p. 9).

Based on its consideration of the sentencing factors in 18 U.S.C. § 3553(a), the Court imposed a sentence of time served and five years of supervised release. (Doc. 185, p. 9). The sentence is a substantial departure from Mr. Russell's guideline range and from the reduced sentence that the United States proposed, but the Court finds that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in § 3553(a)(2).

The sentence provides Mr. Russell with needed drug treatment, correctional treatment, and vocational training in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). Through his association with the CareCenter over the past two years,

Mr. Russell has attained and maintained sobriety, found a vocation to which he has devoted himself, and gained a mentor who "gets on to [him] pretty strong." (Doc. 185, p. 7). Since he began using illegal drugs in 1996, Mr. Russell has had only one other significant period of sobriety. (PSR, pp. 17–18). Mr. Russell's work with the CareCenter greatly enhances his ability to steer clear of illegal substances and provides the necessary structure to allow Mr. Russell to continue his recovery. Incarceration in the BOP does not. In the BOP, Mr. Russell likely would have access to illegal substances, and the BOP's drug treatment programs cannot rival the intensive, consistent treatment and supervision that Mr. Russell has through the CareCenter.[2]

As noted, Mr. Russell's criminal conduct is a product of his drug use, so his ability to refrain from using drugs goes hand-in-hand with the sentence's ability to

---

[2] *U.S. v. Janczewski*, 560 F. Supp. 3d 1064, 1067 (E.D. Mich. 2021) ("Since the pandemic began, people whose crimes were fueled by addiction have had even less access to rehabilitative programs, including drug treatment, than normal. Drugs, on the other hand, have remained readily available, despite severe limitations on outside access to BOP facilities. And even though the First Step Act directed the BOP to expand access to Medication Assisted Treatment ("MAT") for people addicted to opioids, only 268 people—less than two percent of the more than 15,000 the BOP estimates are eligible—are currently enrolled in the MAT Program."); *U.S. v. Walker*, 252 F. Supp. 3d 1269, 1299 (D. Utah 2017), *aff'd*, 918 F.3d 1134 (10th Cir. 2019) ("Mr. Walker's continued rehabilitation will be more supported by a sentence of probation than incarceration at this time. Incarceration could not provide Mr. Walker with needed educational or vocational training or other treatment that would be more effective than that he has already undertaken. Moreover, probation will allow Mr. Walker to continue and to strengthen his recovery in the most effective manner."); *see also Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (stating, in dicta, that "[d]rug smuggling and drug use in prison are intractable problems.").

protect the public from future crimes that Mr. Russell might commit. 18 U.S.C. § 3553(a)(2)(C). If history is an indicator, then successful drug treatment in the most effective manner will preclude future criminal conduct by Mr. Russell. Mr. Russell has no prior felony convictions; he has a criminal history score of zero. His criminal history consists of a municipal court conviction for driving under the influence when he was 21 years old; he is now 45. (PSR, pp. 3, 14);[3] *see* United States Sentencing Commission, *Recidivism of Federal Drug Trafficking Offenders Released in 2010*, p. 55, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220112_Recidivism-Drugs.pdf (last visited Nov. 23, 2022) ("[T]he two indicators most clearly correlated with recidivism among drug trafficking offenders were criminal history and age. Generally, as offenders' criminal history points increased, the recidivism rate likewise increased," and the older the offender, the lower the rearrest rate.); *see also* U.S. Department of Justice, *National Institute of Justice, Five Things about Deterrence*, p. 2, https://www.ojp.gov/pdffiles1/nij/247350.pdf (last visited Nov. 23, 2022) (explaining that data shows "a steep decline" in criminal behavior "at about age 35").[4] Generally, methamphetamine trafficking offenders with sentences ranging

---

[3] Mr. Russell has two other arrests. Both cases were dismissed. (PSR, pp. 14-15).

[4] Mr. Russell is working to complete a degree in theology. (PSR, p. 18, ¶ 82). A college degree is predictive of significantly lower rates of rearrest. United States Sentencing Commission, *Recidivism of Federal Drug Trafficking Offenders Released in 2010*, p. 112,

from five to ten years have a higher rate of rearrest, though by a relatively small margin, than offenders sentenced to fewer than six months in prison. United States Sentencing Commission, *Recidivism of Federal Drug Trafficking Offenders Released in 2010*, p. 113, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220112_Recidivism-Drugs.pdf (last visited Nov. 23, 2022).

True, a sentence of substantial incarceration would reflect the seriousness of the offense and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), but the cost of the punishment would be remarkably high. A 67-month sentence would cost taxpayers approximately $200,000, (PSR, p. 22, ¶ 101), and would provide taxpayers no meaningful benefit. Five plus years in prison would not deter criminal conduct because Mr. Russell has no incentive for criminal conduct while he is sober, and his sobriety is a condition of his continued association with the CareCenter and his court supervision.[5] In fact, given the availability of drugs in

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research publications/2022/20220112_Recidivism-Drugs.pdf (last visited Nov. 23, 2022).

[5] In May of 2016, the National Institute of Justice wrote: "Sending an individual convicted of a crime to prison isn't a very effective way to deter crime. Prisons are good for punishing criminals and keeping them off the street, but prison sentences (particularly long sentences) are unlikely to deter future crime." U.S. Department of Justice, *National Institute of Justice, Five Things about Deterrence*, https://www.ojp.gov/pdffiles1/nij/247350.pdf (last visited Nov. 23, 2022). The National Institute of Justice "provides objective and independent knowledge and tools to inform the decision-making of the criminal justice community to reduce crime and advance justice, particularly at state and local levels." National Institute of Justice, *Mission and Guiding Principles*, https://nij.ojp.gov/about/national-institute-justice-mission-and-guiding-principles (last visited Nov. 23, 2022).

prison, the stressors attendant to imprisonment, and the absence of robust treatment programs in prisons, incarceration for the sake of punishment alone serves only to make the public more, not less, vulnerable to future crimes that Mr. Russell might commit if he relapsed.  18 U.S.C. § 3553(a)(2)(C); *see U.S. v. Rodriguez*, 724 F. Supp. 1118, 1119 (S.D.N.Y. 1989) ("The rehabilitation of a drug addict by his act of will is no mean accomplishment . . . . The imposition of a year's jail sentence would serve no end, but ritualistic punishment with a high potential for destruction. Indeed, putting the defendant in jail for a year would be the cause most likely to undo his rehabilitation.").

Mr. Russell has incentives beyond his work at the CareCenter and his court supervision to remain sober:  12-year-old twins and 9 and 5-year-old sons.  (PSR, p. 16).  Since becoming sober at the CareCenter, Mr. Russell is rebuilding his relationship with his children and spending significant time with them.  (Doc. 184, p. 10; Doc. 185, p. 7).  He understands that a return to old habits would jeopardize those important relationships.

In sum, in imposing a sentence, the Court considered Mr. Russell's progress over his two years at CareCenter, his service to the community as a leader at CareCenter, his most effective means of drug treatment, and the best way to protect the public from future criminal conduct on Mr. Russell's part.  The Court considered the seriousness of the offense but noted Mr. Russell's effort to turn his life around

and the potential for regression if Mr. Russell leaves his current position for a lengthy period of imprisonment. Though Mr. Russell's sentence creates a mathematical disparity in relation to the sentences for other defendants in this case, Mr. Russell's sentence is comparable to other sentences the Court has imposed for defendants like Mr. Russell who have successfully undertaken rehabilitation efforts.

For these reasons, the Court concludes that a sentence of time-served and five years of supervised release is sufficient but not greater than necessary to serve the statutory purposes of sentencing.

**DONE** and **ORDERED** this November 23, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE